UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| MICHAEL JOSEPH GRANT, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| v. | ) | No. 1:08-cv-73 |
| | ) | *Chief Judge Curtis L. Collier* |
| DISTRICT ATTORNEY STEVE HATCHETT | ) | |
| JUDGE CARROL L. ROSS, DETECTIVE | ) | |
| CARL MASKEW, DETECTIVE JIMMY | ) | |
| SMITH, DETECTIVE MICHAEL HUMBLE, | ) | |
| STATE PROBATION OFFICER J.M. | ) | |
| CREECH, | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM

The Court is in receipt of a *pro se* civil rights complaint and several motions filed by Michael Joseph Grant ("Grant").

In his complaint, Grant claims he was subjected to an unconstitutional search; unconstitutionally prosecuted in violation of an immunity agreement; enslaved in violation of the Thirteenth Amendment; forced to enter a guilty plea without assistance from an attorney because the judge refused to consider his indigency petition; had his probation unconstitutionally revoked; and had his personal medical information revealed (Court File No. 3). Grant's affidavit amending his complaint reveals that in essence, he is attacking his conviction and the revocation of his probation (Court File No. 2).

For the reasons discussed below, Grant's complaint and amended pleadings will be **DISMISSED** (Court File Nos. 3, 12, & 13).

## I.     APPLICATION TO PROCEED IN FORMA PAUPERIS

It appears from the application to proceed in forma pauperis submitted by Grant that he

lacks sufficient financial resources at the present time to pay the required filing fee of $350.00.

Grant is not relieved of the ultimate responsibility of paying the $350.00 filing fee. Since Grant is

a prisoner in custody at Northwest Correctional Complex in Tiptonville, Tennessee, he is

**ASSESSED** the civil filing fee of $350.00 under the Prisoner Litigation Reform Act, Pub. L.

104-134, 110 Stat. 1321, codified in 28 U.S.C. § 1915. Grant shall pay the full filing fee of

three-hundred and fifty dollars ($350.00).

Pursuant to 28 U.S.C. § 1915(b)(1)(A) and (B), the custodian of Grant's inmate trust account

at the institution where he now resides shall submit to the Clerk, United States District Court, 900

Georgia Avenue, Room 309, Chattanooga, Tennessee 37402, as an initial partial payment,

whichever is the greater of

    (a)    twenty percent (20%) of the average monthly deposits to Grant's inmate trust account; or

    (b)    twenty percent (20%) of the average monthly balance in Grant's inmate trust account for the six-month period preceding the filing of the complaint.

Thereafter, the custodian shall submit twenty percent (20%) of Grant's preceding monthly

income (or income credited to his trust account for the preceding month), but only when such

monthly income exceeds $10.00, until the full filing fee of $350.00 as authorized under 28 U.S.C.

§ 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk of Court will be DIRECTED to send a copy of this memorandum and order to the

Warden and Custodian of Records at Northwest Correctional Complex, in Tiptonville, Tennessee,

the Commissioner of the Tennessee Department of Correction, and the Attorney General for the

State of Tennessee, to ensure the custodian of Grant's inmate trust account complies with the portion

of the Prison Litigation Reform Act relating to payment of the filing fee.

2

The agency having custody of the plaintiff SHALL collect the filing fee as funds become available. This order shall become a part of inmate Grant's file and follow the inmate if he is transferred to another institution. The agency having custody of the plaintiff shall continue to collect monthly payments from Grant's prisoner account until the entire filing fee of $350.00 is paid.

The plaintiff will be ORDERED to provide the prison officials at any new institution with a copy of this order. Failure of the plaintiff to provide the new prison officials with a copy of this order and outstanding debt will result in the imposition of appropriate sanctions against plaintiff without any additional notice or hearing by the Court.

## II.    NON-DISPOSITIVE MOTIONS

Grant has filed numerous motions which the Court will address prior to addressing his complaint.

### A.    *Injunctive Relief*

Grant has filed two motions for injunctive relief, neither of which, as explained below, sufficiently state a viable claim for injunctive relief (Court File Nos. 5 & 18). In his first motion, Grant requests the Court to prevent the Bradley County Sheriff's Department from transferring him to a Tennessee Department of Corrections ("TDOC") Facility which would prevent him from having easy access to his family. In addition, Grant requests the Court to restrain the Sheriff's department from prosecuting him or his girlfriend; isolating or depriving him from outside contact and communication; denying him appellate counsel; and interfering with his constitutional rights (Court File No. 5). As explained below, Grant is not entitled to injunctive relief.

3

Initially, the Court observes that Grant is no longer incarcerated in the Bradley County Jail; thus, his request for injunctive relief from conditions at the Bradley County Jail is moot. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (claims requesting declaratory and injunctive relief were moot because plaintiff was no longer at the institution). Accordingly, all claims for injunctive relief as to the conditions at the Bradley County Jail are **DENIED as MOOT**. Nevertheless, even if Grant's claims for injunctive relief were properly before the Court, he would be denied relief as explained herein.

To secure injunctive relief, a plaintiff must demonstrate actual present harm or a very significant possibility that future harm will ensue. *Blakely v. United States*, 276 F.3d 853, 873 (6th Cir. 2002). To obtain preliminary injunctive relief, the moving party must demonstrate exposure to a significant risk of irreparable harm, absent the requested judicial intervention. Mere speculation of possible harm is insufficient to state a claim for injunctive relief. The mere fact that a party previously suffered harm will not suffice since "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects. . . . [W]hile past illegal conduct might constitute [relevant] evidence [] regarding whether there is a real and immediate threat of repeated injury, where the threat of repeated injury is speculative or tenuous, there is not standing to seek injunctive relief." *Id.* (internal quotations and citations omitted).

First, Grant requests the Court to prohibit Bradley County from transferring him to another facility so he can remain close to his family. Subsequent to filing the instant motion, Grant was transferred to a state facility. Nevertheless, such a transfer does not warrant relief, as Grant does not have a liberty interest in serving his sentence in a facility near his family. *Meachum v. Fano*, 427

4

U.S. 215, 224 (1976) (The Constitution does not guarantee that a convicted prisoner will be placed in any particular prison and the Due Process Clause does not protect a convicted prisoner against transfer from one institution to another within the state prison system.); *Turnboe v. Gundy*, 27 F. App'x. 339, 340 (6th Cir. 2001), *available in* 2001 WL 1178215 (Transfer to another facility "does not implicate a Fourteenth Amendment liberty interest because a prisoner has no right to be incarcerated in a particular prison."); *Geiger v. Prison Realty Trust, Inc.*, 13 F. App'x. 313, 315 (6th Cir. 2001), *available in* 2001 WL 700812 ("A prisoner has no inherent constitutional right to be confined in a particular prison.").

In addition, Grant requests the Court to restrain the Sheriff's department (presumably) from retaliating against him. Specifically, he requests the Court to restrain the Sheriff's department from prosecuting him or his girlfriend; isolating or depriving him from outside contact and communication; denying him appellate counsel; and interfering with his constitutional rights. These general and factually unsupported allegations offer no evidence upon which the Court could adequately determine whether Grant has suffered actual harm or is likely to suffer harm in the future. He alleged no specific acts of retaliation against him and no real or immediate threat of irreparable injury. Vague and factually unsupported conclusions about possible future harm are insufficient to state a claim. *See Blakely v. United States*, 276 F.3d at 873 ("When seeking injunctive relief, a plaintiff 'must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review.'") (quoting *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001)).

Accordingly, absent a showing of actual present harm or a significant possibility of future harm, Grant's motion for injunctive relief is **DENIED** (Court File No. 5).

5

In his second motion requesting injunctive relief, Grant asks the Court to prevent Judge Carroll Ross, who presided over his state criminal case, and the prosecutor in that case from being involved with his state post-conviction case because, according to Grant, Judge Ross dismissed his post conviction petition and his *pro se* documents were stamped filed on the same day, when, in fact, they were filed on different dates (Court File No. 18).

As previously explained, a claim for injunctive relief must be supported by a demonstration of "actual present harm or a significant possibility of future harm." *Blakely v. United States*, 276 F.3d at 873. An adverse ruling by a judge does not state a claim for injunctive relief. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."); *see also Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001) (concluding the same)). Thus, the fact that a state judge dismissed a post-conviction petition or that documents were stamped filed on the same date though they were mailed on different dates, fails to demonstrate an actual present harm or a significant possibility of future harm. Consequently, Grant has not stated a claim for injunctive relief and his motion for such relief against the state court judge and state prosecutor will be **DISMISSED** (Court File No. 18).

B.      *Motion to Amend*

Grant has filed a motion requesting permission to amend his complaint (Court File No. 9). The complaint has not been served and Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend his complaint "once as a matter of course at any time before a responsive pleading is served[.]" Accordingly, Grant's motion to amend his complaint will be **GRANTED** (Court File No. 9).

6

C.      *Motions for Extension of Time and to Compel*

Grant's motion for an extension of time in which to comply with the Court's Deficiency Order will be **DENIED as MOOT** since the information he attached to his *in forma pauperis* form is sufficient to enable the Court to rule on his *in forma pauperis* application (Court File No. 10). Likewise, Grant's motion to compel the Officer over the Bradley County Inmate Accounts to issue a certified and notarized copy of his inmate account will be **DENIED as MOOT** since Grant is no longer incarcerated at the Bradley County Justice Center (Court File No. 11).

D.      *Motion for Subpoena*

Also before the Court is Grant's motion to subpoena an entire copy of the state court record of his Bradley County Criminal Case (Court File No. 19). Rules 26 through 37 of the Federal Rules of Civil Procedure govern discovery in civil actions. In general, information is obtained from parties through service of discovery requests, including document requests and interrogatories. Information is obtained from non-parties through subpoenas. Fed.R.Civ.P. 45. Motions are appropriate only when a dispute concerning discovery arises. Defendants have not been served with the complaint, thus, Grant's motion for discovery is premature. Accordingly, Grant's motion for discovery will be **DENIED** (Court File No. 19).

E.      *Motion to Add Plaintiffs*

Grant has filed a motion to add Ms. Kristen Gail Rue ("Ms. Rue") and his son, Zachary Ryan Grant, as plaintiffs, claiming they have been affected by the "civil rights deprivations imposed on" Grant by Defendants (Court File No. 21). It appears that § 1983 does not provide a mechanism for family members to recover their own damages for the alleged illegal incarceration of Grant. *See Kinzer v. Metropolitan Government of Nashville*, 451 F.Supp.2d 931, 933 (M.D. Tenn. 2006)

7

("Section 1983 itself, however, does not provide a mechanism for a decedent's family members to recover their own damages, regardless of whether such damages are or are not available under state law"). Grant does not identify Ms. Rue as a family member, nor does he identify any law which permits her to be joined as a plaintiff. Accordingly, to the extent he requests to amend the complaint to add Ms. Rue as a plaintiff, the motion will be **DENIED** (Court File No. 21).

As to his son, it appears that Grant is claiming his son has lost the companionship and support of his father. To make out a claim under Section 1983, a plaintiff is required to show that he has been deprived of a right, privilege, or immunity secured to him by the United States Constitution or other federal law and that the defendants caused the deprivation while they were acting under color of state law. *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000); *Baker v. Hadley*, 167 F.3d 1014, 1017 (6th Cir.), *cert. denied*, 528 U.S. 813 (1999); *Valot v. Southeast Local School Dist. Bd. of Educ.*, 107 F.3d 1220, 1225 (6th Cir.), *cert. denied*, 522 U.S. 861 (1997); *Roberts v. U.S. Jaycees,* 468 U.S. 609, 618 (1984) (explaining that certain family relationships give rise to a Constitutionally protected liberty interest.). "When discussing the constitutionally protected right to familial association, courts focus on the parental right of custody and control over their children." *Kottmyer v. Maas,* 436 F.3d 684, 691 (6th Cir. 2006). Presumably, Grant is requesting to add his son as a plaintiff on the premise that his son has a constitutional liberty interest in his relationship with his father for companionship and support which the child may not be deprived of by the unconstitutional incarceration of his father. The Court, however, expresses no view about whether Grant's son has a claim for familial association and right to companionship and support, because even if he has such a right, *Heck v. Humphrey,* 512 U.S. 477,486-87 (1994), presents an obstacle to the assertion of that right at the present time because Grant's conviction has

8

not been reversed.

Grant claims law enforcement's breach of his immunity agreement resulted in his illegal conviction, and the probation officer's false report and testimony resulted in his illegal incarceration, thus depriving his son of his companionship and support. In *Heck*, the Supreme Court noted that to recover damages for an alleged unconstitutional conviction or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, the plaintiff must first prove the conviction or sentence has been overturned. Clearly, a finding that law enforcement breached the immunity agreement or that the probation officer falsified a probation revocation report and testified falsely would necessarily implicate his conviction and sentence. The *Heck* doctrine applies here. Therefore, since Grant's conviction and sentence have not been overturned, it would be futile to permit him to amend the complaint to add his son as a plaintiff based on underlying claims which are being dismissed.

Accordingly, the motion to amend will be **DENIED** as futile (Court File No. 21). The Court turns now to the pleadings themselves.

## III.    STANDARD OF REVIEW

### A.    *Pro Se Standard*

*Pro se* pleadings filed in civil rights cases are liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, *pro se* status does not exempt the plaintiff from the requirement that he comply with relevant rules of procedural and

substantive law. *Hulsey v. State of Texas*, 929 F.2d 168, 171 (5th Cir. 1991); *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981). *Pro se* plaintiffs must comply with Rule 8 of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1104 (6th Cir. 1995). Although the standard of review is liberal, it does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (standard of review for dismissing a complaint pursuant to Fed. R. Civ. P. 12(b)(6)-failure to state a claim upon which relief may be granted); *LRL Properties*, 55 F.3d at 1103-04; *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993); *Hartfield v. East Grand Rapids Public Schools*, 960 F. Supp. 1259, 1268 (W.D. Mich. 1997). The complaint must give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Lillard*, 76 F.3d at 726; *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). "In practice, 'a . .

. complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Lillard*, 76 F.3d at 726 (citations omitted).

The Court must screen the complaint pursuant to 28 U.S.C. § 1915A and § 1915(e). And the Court must dismiss a case at any time if the Court determines that it is frivolous or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2).

B.      *Screening Pursuant to 28 U.S.C. §§ 1915A and 1915(e)*

When screening a prisoner complaint, a district court must examine both § 1915(e)(2) and § 1915A. If the civil action seeks redress from a governmental entity, officer, or employee, the district court must dismiss the complaint, or any portion of the complaint, which (a) is frivolous, malicious, or fails to state a claim upon which

10

relief may be granted, or (b) seeks monetary relief from a defendant who is immune from monetary relief. 28 U.S.C. § 1915A. Should the complaint contain any allegations that do not fall within § 1915A, the district court must then examine the complaint under § 1915(e)(2). The requirements of §1915(e)(2) overlap the criteria of § 1915A. Section 1915A is restricted to prisoners who sue government entities, officers, or employees. In contrast, § 1915(e)(2) is restricted neither to actions brought by prisoners, nor to cases involving government defendants. Further, § 1915A is applicable at the initial stage of the litigation, while § 1915(e)(2) is applicable throughout the entire litigation process. A case that may not initially appear to meet §1915(e)(2) may be dismissed at a future date should it become apparent that the case satisfies this section. Thus, in prisoner cases, the district court must first examine a complaint under § 1915A and then review the complaint under § 1915(e)(2) before the case can proceed in due course. A district court is required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel as the statute does not differentiate between various civil actions brought by prisoners. The dismissal of a complaint under §1915(e)(2) or § 1915A does not negate a prisoner's obligation to pay the filing fee in accordance with § 1915(b)(1)- (2). See In re Tyler, 110 F.3d [528,][] 529-30[(8th Cir. 1997)]. We make it explicit: a court's responsibility under the Prison Litigation Act is to first examine the financial status of a prisoner and make the assessment of fees. After the fees have been assessed, the merits of a complaint or appeal may be reviewed. Our mandate, however, does not prevent a district court from making the fee assessment and conducting the screening process in the same opinion or order.

*McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997).

## IV. FACTS

In reviewing the complaint, the Court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983). The following facts are taken from Grant's complaint and amendments. Where there were conflicting interpretations of facts, the Court accepted the facts in Grant's amended affidavit of complaint, which was made under oath, and construed them in plaintiff's favor.

On November 21, 2006, Detectives Carl Maskew ("Detective Maskew") and Jimmy Smith ("Detective Smith"), entered Grant's home and conducted a search against his wishes without a

11

warrant.

On December 10-12, 2006, while Grant was incarcerated, Detective Maskew and District Attorney Steve Hatchett ("DA Hatchett") entered into an agreement with Grant to grant him immunity from prosecution in exchange for information on an unrelated case. In violation of this agreement, Detective Smith went before the Grand Jury and obtained a "True Bill" against Grant on

April 5, 2007, and had him arrested in May of 2007 for aggravated burglary and theft of property. Grant paid bond with his last paycheck from Detective Michael Humble ("Detective Humble"), his employer at the time.[1]

Judge Carroll L. Ross ("Judge Ross") refused to conduct a hearing on Grant's petition for indigency. Therefore, to prevent his bond from being revoked, Grant entered into a plea bargain without advice of counsel. Grant pleaded guilty and received a sentence of four years suspended on October 8, 2007.

Probation Officer J.M. Creech ("P.O. Creech") subsequently falsified reports and lied under oath which resulted in the revocation of Grant's probation. P.O. Creech gave Grant a urinalysis without allowing Grant to submit a list of medication and supplements he was taking for HIV/AIDS. The test results were positive for marijuana and methamphetamine. DA Hatchett prosecuted Grant's probation violation and Judge Ross presided over the hearing. Judge Ross would not permit Grant to submit phone records during this hearing.

On January 24, 2008, when Grant reported to the State Probation Office, he was taken into custody by a Cleveland Police Officer who informed Grant that Officer Creech stated Grant was

_____

[1]        Detective Humble employed Grant in his lawn-care business.

12

HIV positive.

Detective Humble, Grant's employer at the time, told Grant he would take care of the burglary charges. According to Grant, Humble's promise forced him to remain in Detective Humble's employment. Grant claims he was forced to work 50-70 hours a week for a flat rate of $10.00 per hour (Court File Nos. 3, 12).

## IV.    CLAIMS

### A.    *Illegal Search*

Grant claims that on November 21, 2006, Detectives Maskew and Smith, entered Grant's home and conducted a search against his wishes without a warrant. Grant filed his complaint on March 26, 2008. For purposes of 42 U.S.C. § 1983, state statutes of limitation and tolling principles shall apply to determine the timeliness of the claims asserted. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). However, federal law determines the accrual of those claims. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996), *cert. denied*, 117 S. Ct. 2439, 138 L. Ed. 2d 199 (1997); *LRL Properties*, 55 F.3d at 1107.

Federal courts are to apply the single most analogous state personal injury statute of limitations to claims brought under 42 U.S.C. § 1983. *See Wilson v. Garcia*, 471 U.S. at 276. Under Tennessee law, the statute of limitations for a civil action for compensatory or punitive damages brought under the federal civil rights statutes is one year after the cause of action has accrued. The one-year statute of limitations period contained in Tenn.Code Ann. § 28-3-104(a) applies to civil rights claims arising in Tennessee. *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir.1986). Grant's claims under 42 U.S.C. § 1983 constitute civil actions brought under federal civil right statutes and are therefore subject to the one-year statute of limitations.

13

Generally, a tort cause of action accrues when there has been a violation of a legally protected interest, and such a violation usually occurs when a tortuous act is committed. *See Echols v. Chrysler Corp.*, 633 F.2d 722, 725-26 (6th Cir. 1980). This is known as the "time of event" rule and is applied whenever greater than *de minimis* harm is discernible at the time of the tortuous event. *Hicks v. Hines Inc.*, 826 F.2d 1543, 1544 (6th Cir. 1987).

A statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that is the basis of his actions. *Collyer*, 98 F.3d at 220. A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991).

According to Grant, the warrantless and non-consensual search of his residence was conducted on November 21, 2006. Thus, assuming he was present during the search, that was the date he had notice of the alleged injury.

Grant filed his § 1983 complaint on March 25, 2008. Applying the one-year statute of limitations, any claim that accrued prior to March 25, 2007, is time-barred. According to the record before the Court, which was submitted by Grant, his residence was illegally searched on November 21, 2006, and he filed the instant complaint on March 25, 2008, approximately four months after the expiration of the one-year statute of limitations. Therefore, any claim based on the alleged illegal search of Grant's residence on November 21, 2006, is time-barred, and will be **DISMISSED**.

B.      *Heck-Barred Claims*

Grant seeks damages from District Attorney Hatchett, and Detectives Maskew and Smith for civil rights violations stemming from an alleged breached of an immunity agreement. Grant alleges the state prosecutor and the detectives breached an immunity agreement, resulting in a conviction

for which he is currently serving a sentence.

In *Heck v. Humphrey,* the United States Supreme Court directed "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* 512 U.S. at 487. The required analysis focuses on the remedy resulting from a prisoner's success on the merits of his or her claims, rather than on the particular remedy sought by the Complaint. Thus, even if the prisoner seeks monetary damages for the claimed constitutional violations, as Grant does, his complaint is not cognizable under § 1983 when success on the merits "necessarily impl[ies] the invalidity of the punishment imposed." *Wood v. Balisok*, 520 U.S. 641, 648 (1997).

A judgment for Grant on the alleged breach of the immunity agreement would imply that his conviction is invalid. His claim is that although the defendants promised not to prosecute him, they subsequently violated the immunity agreement and prosecuted him. Thus, a finding that the defendants breached the immunity agreement necessarily implies the invalidity of Grant's conviction. Grant has not demonstrated that his conviction or sentence has been invalidated, therefore, under the *Heck v. Humphrey* rule, his civil rights claim for damages, as well as any contract claim for damages from the alleged breach of the immunity agreement, must be **DISMISSED WITHOUT PREJUDICE** since the resolution of this claim in Grant's favor would necessarily implicate the invalidity of his conviction and sentence.

Likewise, Grant's claims against P.O Creech (allegedly falsifying his probation revocation petition and testifying falsely during the revocation hearing) are barred by the *Heck* doctrine. Grant contends P.O. Creech falsified reports and lied under oath in order to revoke Grant's probation.

Officer Creech allegedly gave Grant a urinalysis without allowing Grant to submit a list of medication and supplements he was taking for HIV/AIDS which presumably would have explained the methamphetamine and marijuana detected in his urine. In addition, Grant claims P.O. Creech, disclosed private medical information (that Grant is HIV positive) to police officers.

The Court construes Grant's claims against the probation officer as a malicious prosecution claim since he contends P.O. Creech wrongfully instituted legal process based on false reports and testimony. Grant is seeking damages from the probation officer for his incarceration following his revocation hearing. Since a judgment in Grant's favor on this claim would necessarily implicate the invalidity of the revocation and resulting sentence, such a claim must also be dismissed because it is barred by the *Heck* doctrine.

As previously explained, under *Heck* a plaintiff may not bring a § 1983 claim for alleged unconstitutional confinement "if success in that action would necessarily demonstrate the invalidity of the confinement," *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), unless the plaintiff proves the sentence of confinement "has been reversed on direct order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 486-87. Grant's claim that revocation of his probation was unconstitutional falls within the category of cases covered by the *Heck* doctrine. *See Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (applying *Heck* to bar § 1983 claim based on revocation of parole); *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996) (holding *Heck* "applies to proceedings that call into question the fact or duration of parole or probation").

For Grant to succeed in a § 1983 claim based on a theory of malicious prosecution, he would have to show that his probation revocation was initiated without probable cause. *See Lawson v.*

16

*Kroger Co.*, 997 F.2d 214, 216 (6th Cir. 1993) ("The tort of malicious prosecution has four elements. The plaintiff must ... prove that the defendants brought an action against the plaintiff, that the action was terminated in favor of the plaintiff, and that the defendants acted with malice and without probable cause to believe the facts upon which the claim was based.").  Such a showing would necessarily demonstrate the invalidity of his probation revocation and his subsequent re-sentencing. Therefore, Grant must demonstrate that his probation revocation and sentence have been invalidated before he may bring his claim to federal court.  Grant cannot make this showing as he is currently serving his revoked sentence.

Accordingly, Grant's probation revocation claim is barred by the *Heck* doctrine and will be **DISMISSED**.

  C. *Judge Ross*

Grant claims Judge Carroll L. Ross refused to conduct a hearing on Grant's petition for indigency, thus forcing him to enter into a plea bargain without advice of counsel so his bond would not be revoked.  Grant pleaded guilty and received a sentence of four years suspended on October 8, 2007.   In addition, Grant claims Judge Ross presided over his probation revocation hearing. These claims, however, even if not barred by *Heck*, do not entitled Grant to any relief because Judge Ross is protected from suit by the cloak of judicial immunity and Grant has not provided any facts which defeat Judge Ross' judicial immunity.

"Few doctrines [are] more solidly established ... than the immunity of judges from liability for acts committed within their jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (citing *Bradley v. Fisher*, 80 U.S. 335, 340 (1871)). Judges are absolutely immune from acts committed within their jurisdiction even if those acts are committed "maliciously and corruptly."  *Mireles v.*

*Waco*, 502 U.S. 9, 11 (1991). The two exceptions to this immunity are when a judge's acts are not judicial in nature or are taken in the "complete absence" of jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles v. Waco*, 502 U.S. 9, 10 (1991) (citations omitted).

Accordingly, Judge Ross' alleged actions, which were judicial in nature and not in absence of jurisdiction, were taken in his judicial capacity; thus, he is entitled to judicial immunity and these claims will be **DISMISSED**.

      D.     *Labor Claim*

Grant's original complaint, which was not signed under oath or penalty of perjury, claims Detective Humble, Grant's employer at the time, used the threat of prosecution from Detective Smith to force Grant to remain in his employment. Detective Humble forced Grant to work 50-70 hours a week for a flat rate of $10.00 per hour. However, in his amended affidavit of complaint, which Grant "swor[e] to be true and under penalty of oath to the truthfulness," Grant claims he continued

working because Detective Humble promised he would take care of the burglary charge (Court File No. 12). This claim is vague, convoluted, and difficult to decipher.

Initially the Court observes that Grant was working for Detective Humble in his lawn care business. Thus, in his capacity as Grant's employer, Detective Humble was a private employer and not a state actor as required under § 1983. *See Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (explaining the tests to determine whether the challenged conduct may be fairly attributable

18

to the state for purposes of § 1983). Accordingly, since Detective Humble did not act under color of state law in his capacity as Grant's employer, he was not a state actor for purposes of § 1983. Nevertheless, even if he was a state actor, Grant has failed to state a viable claim against Detective Humble.

It appears Grant continued to work for Detective Humble based on Detective Humble's promise to take care of his pending criminal case. However, the failure to fulfill that promise does not amount to a claim of involuntary servitude in violation of the Thirteenth Amendment of the United States Constitution because Grant was working based on a promise to take care of the burglary case and not "by the use or threatened use of physical restraint or injury, or by the use of threat of coercion through law or the legal process," *United States v. Kozminski*, 487 U.S. 931, 948, 952 (1988), which is required to qualify as a Thirteenth Amendment violation.

In *United States v. Kozminski*, the Supreme Court addressed the meaning of the term "involuntary servitude" under the Thirteenth Amendment. The Amendment was not limited to the abolishment of African slavery, but "the phrase 'involuntary servitude' was intended to extend 'to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'" *Id.* at 942 (citation omitted). The *Kozminski* Court held that only situations involving the compulsion of services "by the use or threatened use of physical restraint or injury, or by the use of threat of coercion through law or the legal process" constitute "involuntary servitude" prohibited by the Thirteenth Amendment." *Id.* at 948, 952.

Nevertheless, since Grant avers that he continued to work because Detective Humble promised to take care of his burglary charges, he has failed to state a Thirteenth Amendment, involuntary servitude claim. Accordingly, this claim will be **DISMISSED** for failure to state a

claim.

*E.    Miscellaneous Claims*

Grant has made miscellaneous claims which do not entitle him to any relief.  For example, in his amended affidavit of complaint, Grant claims that approximately four months after he was released on bond for the Aggravated Burglary charge, he was arrested on a 2005 worthless check warrant and while making bond on that charge it came to his attention that there were other warrants for his arrest dating back to 1992.  According to Grant, the "Bradley County Detectives were holding these warrants so that they could serve them one at a time every few weeks, to keep the plaintiff in a continual state of financial distress and to circumvent due process warrant procedure regarding searches." (Court File No. 12)  This claim is factually unsupported and based on mere speculation.  Accordingly, this claim will be **DISMISSED** because factually unsupported speculations fail to state a claim upon which relief may be granted.

In addition, Grant makes several miscellaneous claims in his amended affidavit of complaint which, in effect, attack his conviction and his revocation.  For example, Grant attacks the veracity of statements given by Ken Croft implicating Grant's guilt, and he claims Detective Smith presented his voided partially-signed waiver, as well as Croft's purportedly erroneous statement, to the grand jury.  Since findings in Grant's favor on these claims would necessarily implicate the validity of his conviction, these miscellaneous claims are all **DISMISSED** as *Heck*-barred.

## VI.    CONCLUSION

Pursuant to the *Heck* doctrine, Grant's general attacks on his conviction and revocation, and his claim of breach of the immunity agreement and attack on his probation revocation are **DISMISSED WITHOUT PREJUDICE**.    The remainder of Grant's claims are **DISMISSED**

20

**WITH PREJUDICE** for failure to state a claim upon which relief may be granted. 28 U.S.C.

A separate judgment order will enter.

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**